IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

BRITNEY PARSLEY,

                Plaintiff,

*v.*                                    CIVIL ACTION NO. 3:23-0525

RUSHMORE LOAN
MANAGEMENT SERVICES LLC,

                Defendant,

and

SN SERVICING CORPORATION and
U.S. BANK TRUST NATIONAL ASSOCIATION
AS TRUSTEE OF THE IGLOO SERIES IV TRUST,

                Rule 19 Parties.

**MEMORANDUM OPINION & ORDER**

Before the Court is Defendant Rushmore Loan Management Services LLC's Motion to

Dismiss ("Def.'s Mot."). ECF No. 10. Defendants SN Servicing Corporation and U.S. Bank Trust

National Association as Trustee of the Igloo Series IV Trust join the motion. *See id.* at 1 n.1. Upon

review, the Court **GRANTS IN PART**, **DENIES IN PART** the Motion.[1]

---

[1] The Court also considered Defendant Rushmore Loan Management Services LLC's Memorandum in Support of its Motion to Dismiss ("Def.'s Mem."), ECF No. 11; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.'s Resp."), ECF No. 12; and Defendant Rushmore Loan Management Services LLC's Reply Memorandum in Support of its Motion to Dismiss ("Def.'s Reply"), ECF No. 15.

## FACTUAL BACKGROUND

In July 2019, Plaintiff Britney Parsley bought her childhood home from her parents. *See* Compl. ¶ 6. At the time of the sale, Parsley's parents maintained a mortgage loan with Defendant Rushmore Loan Management Services LLC. *See id*.

In July 2020, Parsley provided Rushmore a copy of the deed, asked Rushmore to confirm her as a successor in interest, and requested to assume her parent's mortgage loan. *See id.* ¶ 15. In response, Rushmore requested "proof" Parsley was "transferred an ownership interest in the property." *Id.* Parsley shared another copy of the deed and a copy of her driver's license. *See id.* ¶ 17. She told Rushmore she obtained ownership of the home from her parents. *See id.* Rushmore did not confirm her as a successor in interest. *See id.* ¶ 18.

In April 2021, Parsley submitted a Borrower Assistance Application to assume and modify her parent's mortgage loan. *See id.* ¶ 19. In response, Rushmore sent a letter to Parsley's parents. *See id.* ¶ 20. Rushmore informed them their daughter's application was "incomplete" because it failed to include information from "all parties obligated on the loan." *Id.*

In May 2022, Rushmore initiated foreclosure proceedings. *See id.* ¶ 21. Parsley—through counsel—warned Rushmore its actions violated federal and West Virginia law. *See id.* ¶ 22. In response, Rushmore again requested "proof [Parsley was] transferred an ownership interest in the property" before "initiat[ing] [a] review to confirm [her] status as a Successor in Interest." *Id.* ¶ 24. Parsley then submitted a "complete application" to assume and modify her parent's mortgage loan. *Id.* ¶ 25. Rushmore did not respond. *See id.* ¶ 26.

In August 2023, Rushmore transferred servicing rights to the loan to Defendant SN Servicing Corporation. *See id.* ¶ 29. Defendant U.S. Bank Trust National Association scheduled a

foreclosure sale for August 8, 2023. *See id.* To date, Rushmore "continues to send correspondence and statements addressed to borrowers" and "does not communicate" with Parsley. *Id.* ¶ 27.

## LEGAL STANDARD

A motion to dismiss tests the formal sufficiency of the plaintiff's complaint. *See Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While facts alleged in the complaint need not be probable, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if its factual content allows the court to draw the "reasonable inference" the defendant is "liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

The Court must accept all factual allegations in the complaint as true, *see id.*, and draw "all reasonable inferences in favor of the plaintiff," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice." *Id.* (citation omitted). Still, a complaint may proceed even if "a savvy judge" finds actual proof of its alleged facts "improbable" and recovery "very remote and unlikely." *Twombly*, 550 U.S. at 556.

## ANALYSIS

Parsley asserts six causes of action: (1) Failure to Comply with Loss Mitigation Procedures under 12 C.F.R. § 1024.41; (2) Unconscionable Debt Collection under W. Va. Code § 46A-2-128; (3) Misrepresentation under W. Va. Code § 46A-2-127; (4) Tortious Interference with Contract; (5) Negligence; and (6) Fraudulent Misrepresentation. *See* Compl. ¶¶ 33–61. Rushmore moves to dismiss each count. *See* Def.'s Mot. at 1. Upon review, the Court **GRANTS** Defendant's motion

as to Counts I, II, and III. The Court **DISMISSES** these counts. The Court **DENIES** Defendant's motion as to Counts IV, V, and VI.

**I**

As a preliminary matter, Rushmore argues Parsley is barred by *res judicata* from arguing: (1) federal law prohibits Rushmore from exercising the Deed of Trust's due-on-sale clause and accelerating the loan; (2) Parsley is obligated to pay her parents' loan; and (3) Rushmore was required to review additional loss mitigation applications before proceeding with foreclosure. *See* Def.'s Mem. at 5–8 (principal argument). *See also id.* 8, 11, 12, 13, 16, 19 (similar). They argue the U.S. Bankruptcy Court for the Southern District of West Virginia resolved these issues against Parsley in its July 20, 2020 Order Lifting the Automatic Stay. *See id.* at 5. The Court disagrees.

*Res judicata* ensures litigants get only "one bite at the apple to try a case." *Columbia Gas Transmission, LLC v. David N. Martin Revocable Tr.*, 833 F. Supp. 2d 552, 558 (E.D. Va. 2011). When a party invokes *res judicata*, the Court must "closely examine" the allegedly preclusive litigation. *SAS Inst., Inc. v. World Programming, Ltd.*, 874 F.3d 370, 378 (4th Cir. 2017). For the doctrine to apply, there "must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Pueschel v. United States*, 369 F.3d 345, 354–55 (4th Cir. 2004).

Bankruptcy cases involve "an aggregation of individual controversies, many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) (internal quotations omitted). Still, bankruptcy proceedings can yield preclusive decisions. *See, e.g.*, *LVNV Funding, LLC v. Harling*, 852 F.3d 367, 371 (4th Cir. 2017) (relying on *Bullard* to find a bankruptcy court's final sale order may carry preclusive

effects). A bankruptcy court decision will have preclusive effect if it meets the traditional factors of *res judicata*. *See Covert v. LVNV Funding, LLC*, 779 F.3d 242, 246 (4th Cir. 2015).

The Court finds *res judicata* inapplicable at this stage. Typically, a bankruptcy petition automatically halts efforts to collect prepetition debts from the debtor outside the bankruptcy forum. *See* 11 U.S.C. § 362(a). This "automatic stay" helps "maintain[n] the status quo and preven[t] dismemberment of the estate" during the bankruptcy proceedings. 1 Collier on Bankruptcy ¶ 1.05[1], p. 1–13; *id.*, ¶ 362.03, p. 362–23. A creditor may seek relief from the automatic stay by filing a motion for an order "terminating, annulling, modifying, or conditioning" the automatic stay. 11 U.S.C. § 362(d). When filed, the motion initiates a "discrete procedural sequence" that turns on whether the creditor satisfies a statutory standard for relief. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 590 (2020). *See also* Fed. Rules Bkrtcy. Proc. 4001(a)(1), (2), 9014 (describing procedures for adjudicating motions for relief from automatic stay). This "procedural unit" occurs "anterior to, and separate from, claim-resolution proceedings." *Ritzen Grp., Inc.*, 140 S. Ct. at 589. If the creditor prevails, they may isolate their claim from those of other creditors and "go it alone outside bankruptcy." *Id.* at 590. In other words, a motion to lift the automatic stay decides *where* to adjudicate a creditor's claim—state court or bankruptcy court. *See id.* It is distinct from any subsequent claim adjudication. *See id.* at 590–91. It follows that orders granting a lift from the automatic stay should not typically carry preclusive effect.

In *County Fuel Co. v. Equitable Bank Corp.*, the Fourth Circuit suggested the same. *See* 832 F.2d 290, 293 (4th Cir. 1987). The Court stressed the "only issues" orders lifting the automatic stay resolve relate to the adequacy of the creditor's protection, the debtor's equity, and the necessity of the property to effective reorganization. *Id.* As such, orders lifting the automatic stay "should not" be considered final judgments "sufficient to invoke strict *res judicata* principles." *Id.*

To be sure, *County Fuel Co.* left open the possibility of applying *res judicata* to some orders lifting the automatic stay. *Id.* (noting "standing alone" an order lifting the automatic stay should not invoke *res judicata* principles). But since *County Fuel Co.*, courts remain "reluctant" to hold a bankruptcy court's order lifting the automatic stay "provides a basis for *res judicata*" absent "extraordinary circumstances . . . coupled with other events." *Canterbury v. J.P. Morgan Mortg. Acquisition Corp.*, 2010 WL 531453, at *3 (W.D. Va. Dec. 20, 2010). *See also In re Fedewa*, 2021 WL 218725, at *6 (E.D. Va. Jan. 21, 2021) (similar).[2]

Here, the Bankruptcy Court's Order Granting Motion to Lift the Stay is terse. *See* Def.'s Mem., Ex. A, ECF No. 10-1. In fact, most of the bankruptcy proceedings "remain[] an enigma." *Pena v. HSBC Bank USA*, 2014 WL 5684798, at *4 (E.D. Va. Nov. 4, 2014). As such, the Court finds *res judicata* "unfitting." *Id.* Consider each allegedly precluded argument in turn.

As to whether Parsley is obligated under her parent's mortgage loan, the Bankruptcy Court concluded: It is "undisputed" Parsley is "not personally obligated to make payments toward the mortgage loan by either operation of law or by the Deed of Trust and Note, to which she is not a signatory." Def.'s Mem., Ex. A ¶ 10. If the statement's "undisputed" status stems from Parsley's explicit concession, preclusion likely applies. *See Cnty. Fuel*, 832 F.2d at 293 (suggesting a party's "express concession" may "suffice to preclude" relitigating the conceded point); *Providence Hall*, 816 F.3d at 273 (suggesting when a party "concedes the finality of the sale order," the sale order has preclusive effect). If Parsley instead remained silent, preclusion may or may not apply. *See Kadel v. N.C. State Health Plan for Teachers & State Emps.*, 12 F.4th 422, 430–31 (4th Cir. 2021)

---

[2] In *PHA Ltd. Partnership v. Wells Fargo Bank, N.A.*, the Fourth Circuit dubbed *County Fuel*'s discussion of *res judicata* dicta. *See* 816 F.3d 273, 281 & n.2 (4th Cir. 2016). Even if dicta, the Court finds *County Fuel* persuasive as it comports with the Supreme Court's recent discussion in *Ritzen Group* about motions to lift the automatic stay. *Cf. Taylor v. Grubbs*, 930 F.3d 611, 621 (4th Cir. 2019) ("Prior circuit precedent is not binding if an intervening Supreme Court case has 'specifically rejected the reasoning on which [the prior decision] was based.'") (quotation omitted).

(holding party's "silence" on an issue waives subsequent arguments on the issue absent "very limited circumstances"). Without more information, Rushmore's argument is premature.

As to whether Parsley is precluded from arguing (1) federal law prohibits Rushmore from exercising the Deed of Trust's due-on-sale clause and accelerating the loan and (2) Rushmore was required to review additional loss mitigation applications before proceeding with foreclosure, the Bankruptcy Court's brevity works against Rushmore. Although the Bankruptcy Court concluded Rushmore "triggered acceleration of the debt for a cause other than failure to maintain regular payments on the debt," the Court did not speak to whether Rushmore's acceleration violated federal law. Def.'s Mem., Ex. A ¶¶ 12–13 (noting only acceleration was "triggered" by Parsley's parents "transferring an interest in the subject property" to her). Similarly, although the Bankruptcy Court concluded Rushmore "does not acquiesce to assumption of the debt" by Parsley, the Court did not speak to whether Rushmore had any duty to review loss mitigation applications seeking foreclosure. *Id.* ¶ 14. Again, without more information, Rushmore's arguments are premature.

In short, the Court has too little information to decide whether *res judicata* applies at this stage. *See Skibbe v. Accredited Home Lenders, Inc.*, 2014 WL 2117088, at *5 (S.D. W. Va. May 21, 2014) (finding *res judicata* inapplicable because no evidence suggested the plaintiff "explicitly concede[d]" to the servicer's claim and the order lifting the automatic stay did not "indicate whether the plaintiff is waiving all claims or defenses with respect to the underlying loan"). Rushmore may re-raise the issue at summary judgment. *See, e.g.*, *Gilbert v. Deutsche Bank Trust Co.*, 2015 WL 9200417, at *2 (E.D.N.C. Dec. 16, 2015) (declining to dismiss "any portion of plaintiffs' claim" on *res judicata* grounds based on the "current record" but noting whether plaintiff can "survive a motion for summary judgment is an issue for another day").

Accordingly, the Court reviews each of Parsley's claims in turn.

## II

In Count I, Parsley alleges Rushmore violated the Real Estate Settlement Procedures Act by failing to respond to her loss mitigation application and requiring information from her parents. *See* Compl. ¶ 37. Rushmore argues RESPA does not give unconfirmed successors in interest like Parsley a cause of action. *See* Def.'s Mem. at 8–9; Def.'s Reply at 3–5. The Court agrees.

RESPA protects consumers from foreclosure, unnecessarily high settlement charges, and other abusive practices in the real estate mortgage industry. *See* 12 U.S.C. § 2601(a). The Act and its implementing regulations—known as Regulation X—impose duties on loan and mortgage servicers when a borrower asks for help to avoid foreclosure. *See* 12 U.S.C. § 2605. *See also* 12 C.F.R. §§ 1024.31, 1024.41. Despite its lofty purposes, RESPA authorizes only "borrowers" to sue. *See* 12 U.S.C. § 2605(f). The statute does not define "borrower." Fortunately, "ample judicial authority" and Regulation X reveal two groups of plaintiffs can sue under the Act. *Kelly v. Nationstar Mortgage, LLC*, 2020 WL 6790989, at *2 (E.D. Va. July 14, 2020) (quotation omitted). To survive a motion to dismiss, Parsley must allege she fits into at least one.

*First*, "borrower" includes individuals obligated to "pay off the loan financing the purchase of the property." *Id.* To discover these individuals, courts look at who signed the promissory note memorializing the loan obligations. *See Nelson v. Nationstar Mortg., LLC*, 2017 WL 1167230, at *3 (E.D.N.C. Mar. 18, 2017) (collecting cases). An individual who alleges they signed the promissory note—or assumed the responsibilities under the promissory note—provides *prima facie* evidence both the plaintiff and servicer agree the plaintiff must pay the mortgage loan. *See Kelly*, 2022 WL 6790989, at *2. Allegations of obligation are key. Without them, a plaintiff has no cause of cause action. *See id.* (explaining obtaining property subject to a mortgage, signing a mortgage, and voluntarily making mortgage loan payments does not confer "borrower" status).

*Second*, "borrower" includes "confirmed successor[s] in interest." 12 C.F.R. § 1024.30(d). A "confirmed successor in interest" is a "successor in interest once a servicer has confirmed the successor in interest's identity and ownership interest in a property that secures a mortgage loan." 12 C.F.R. § 1024.31. This makes sense. Once a servicer acknowledges a successor's identity and ownership interest in the property securing the mortgage loan, both parties agree the successor is obligated to pay the mortgage loan. *See Walker v. PHH Mortgage Corp.*, 2023 WL 1778514, at *5–*6 (S.D. Fla. Feb. 6, 2023). Again, allegations of obligation are key. *See Kelly*, 2020 WL 6790989, at *4 (dismissing RESPA claim when complaint failed to allege the plaintiffs assumed the mortgage loan—even though the complaint showed the plaintiffs "purchased the property subject to a mortgage and paid on that mortgage obligation").

Parsley does not allege she fits either definition. In fact, she disavows both. She repeatedly alleges her parents are the "borrowers" of the mortgage loan at issue, *see, e.g.*, Compl. ¶¶ 27, 37, 48, 50, 59, and Rushmore never confirmed her as a successor in interest, *see, e.g.*, *id.* ¶¶ 18, 21, 26, 29, 31, 37, 39, 45, 52, 56. Indeed, the thrust of her complaint is Rushmore failed to obligate her to pay her parent's mortgage loan. *See, e.g.*, *id.* ¶¶ 18, 26. These are not allegations of obligation; they are allegations of attempted obligation. As such, Parsley has no cause of action.

Parsley disagrees. She makes two arguments. Neither persuades. *First*, she stresses Rushmore's position "put[s] the servicer in complete control over whether it is subject to liability under RESPA." Pl.'s Resp. at 7. The Court is sympathetic to these concerns. But causes of action "to enforce federal law" must be "created by Congress"—not courts—"no matter how desirable th[ey] may be as a policy matter or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001). Congress refused to define "borrower" in RESPA. Courts stepped up and gave the term its ordinary meaning—an individual who borrowed money from a lender and

promised to pay it back. *See Keen v. Helson*, 930 F.3d 799, 802 (6th Cir. 2019); *Barzelis v. Flagstar Bank, F.S.B.*, 784 F.3d 971, 977 (5th Cir. 2015) (explaining the plaintiff's "legal status under the [loan]" determines "borrower" status); *Johnson v. Ocwen Loan Servicing*, 374 F. App'x 868, 874 (11th Cir. 2010) (similar). If Congress disagrees, it is "free to amend the statute to establish a different rule." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2439 (2019) (Gorsuch, J., concurring).

Moreover, the agency tasked with implementing RESPA—the Consumer Finance Protection Board—considered whether to provide a private right of action against services "triggered by a homeowner's submission of documentation, rather than by the servicer's additional step of confirming the successor in interest's status." Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 81 Fed. Reg. 72160, 72174 (Oct. 19, 2016). The CPFB declined to go this far. *See id.* at 72175 (stating Regulation X "does not provide potential successors in interest a private right of action or a notice of error procedure" for claims against a servicer about successorship status). Instead, the CFPB made clear federal and state agencies maintain "supervision and enforcement authority" against servicers through "complaint monitoring." *Id.* (stating Regulation X does not create a "safe harbor from liability" for successorship determinations).

*Second*, Parsley stresses she provided Rushmore "all documentation it requested to confirm her as successor in interest." Pl.'s Resp. at 7. *See also* Compl. ¶¶ 36–38. This argument misses the point. Allegations of submission are not allegations of obligation. Parsley's "complete application" allegations cannot bestow "borrower" status on her. *See Watson v. HomeBridge Fin. Servs.*, 2022 WL 125278, at *7 (D. Md. Jan. 13, 2022) ("[T]he mere submission of proof" of successorship status "does not upon Plaintiff a status of confirmed successor in interest.") (citation omitted).[3]

---

[3] Parsley argues *Watson* is distinguishable because the plaintiff asserted RESPA claims before the CFPB determined confirmed successors in interest have a cause of action under the Act. *See* Pl.'s Resp. at 7–8. She misreads *Watson*.

Parsley fails to allege she is a "borrower" or a "confirmed successor in interest." As a result, she does not have a cause of action under RESPA. Accordingly, the Court **DISMISSES** Count I.

### III

In Counts II and III, Parsley alleges Rushmore violated the West Virginia Consumer Credit & Protection Act. *See* Compl. ¶¶ 43–48. Count II alleges Rushmore violated W. V. Code § 46A-2-128 by refusing to recognize her as a successor in interest, refusing to process her loss mitigation application, and scheduling a foreclosure sale. *See id.* ¶ 45. Count III alleges Rushmore violated W. Va. Code § 46A-2-127 by requiring information from her parents to evaluate her loss mitigation application. *See id.* ¶ 48. Rushmore argues Parsley cannot assert claims under the WVCCPA because she is not a "consumer." *See* Def.'s Mem. at 11–13; Def.'s Reply at 6–8. The Court agrees.

The WVCCPA "protect[s] consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." *State ex. rel. McGraw v. Scott Runyan Pontiac—Buick, Inc.*, 461 S.E.2d 516, 523 (W. Va. 1995). As its name suggests, the Act provides only "consumers" a cause of action. *See* W. Va. Code § 46A-2-101(1). The Act provides two "specific definition[s]" of "consumer." *Young v. EOSCA*, 800 S.E.2d 224, 230 (W. Va. 2017). *First*, under the Act's general provisions, a "consumer" is a "natural person who incurs debt pursuant to a consumer credit sale or a consumer loan, or debt or other obligations pursuant to a consumer lease," W. Va. Code § 46A-1-102(12). *Second*, under the Act's credit collection provisions, a consumer is a "natural person obligated or allegedly obligated to pay any debt." *Id.* § 46A-2-122.

---

Although the *Watson* plaintiff brought claims before CFPB acted in April 2018, the Court noted two rationales behind its decision to dismiss the plaintiff's RESPA claim. *See Watson*, 2022 WL 125278, at *8. Relevant here, the Court emphasized "mere submission of proof" of successor in interest status "does not confer upon [a] [p]laintiff a status of confirmed successor of interest." *Id.* This rationale controls this case.

The parties agree the second definition applies here. *See* Def.'s Mem. at 11–13; Pl.'s Resp. at 10–12. As such, Parsley must allege she owes mortgage payments to Rushmore *or* Rushmore told her she owes them mortgage payments. *See McNeely v. Wells Fargo Bank, N.A.*, 115 F. Supp. 3d 779, 785 (S.D. W. Va. 2015). She does neither. As a result, she has no cause of action.

Parsley does not allege she is "obligated . . . to pay" her parent's mortgage loan. W. Va. Code § 46A-2-122. To be sure, the complaint details Parsley's struggles to become a confirmed successor in interest. *See* Compl. ¶¶ 15–29. She alleges she "inherited" the home at issue. *See* Compl. ¶ 6. She alleges her parents "had a mortgage loan on the home." *Id.* She alleges Rushmore has yet to confirm her as a successor in interest. *See id.* ¶ 26. She alleges she voluntarily made mortgage payments to "save her home." *Id.* ¶ 31. It is clear Parsley wants Rushmore to require her to pay her parent's mortgage loan by recognizing her as a confirmed successor in interest. But allegations of desire—no matter how genuinely felt—are not allegations of obligation. *See Young*, 800 S.E.2d at 229 (looking for allegations the plaintiff is "obligated . . . on the debt at issue").[4]

Parsley also does not allege she is "allegedly obligated" to pay her parent's mortgage loan. W. Va. Code § 46A-2-122. She does not allege Rushmore ever "identified [her] as a debtor or sought to communicate that she personally owed money." *Young*, 800 S.E.2d at 229. In fact, Parsley alleges the opposite. Whenever Parsley submitted loan modification applications to Rushmore, they requested more information from her parents. *See* Compl. ¶¶ 16, 20, 24. These allegations do not suggest Rushmore attempted to collect mortgage payments from her. In fact,

---

[4] Admittedly, Parsley states "as successor in interest, [she] is obligated to continue payments on the debt, or the servicer may accelerate the loan for default of the payment obligation and proceed to foreclose on the home." Compl. ¶ 14. *See also id.* ¶¶ 44, 47 (similar). But this statement comes after five paragraphs of "legal conclusions couched as factual allegations." *Papasain v. Allain*, 478 U.S. 265, 286 (1986). The Court, therefore, need not consider these conclusory statements. *See, e.g.*, *Johnson v. Ford Motor Co.*, 2015 WL 7571841, at *2 (S.D. W. Va. Nov. 24, 2015) (Chambers, J.) ("[T]he Court may not rely upon naked assertions, speculation, or legal conclusions.") (citing *Iqbal*, 556 U.S. at 678–79).

Parsley alleges Rushmore "continues to send correspondence and statements addressed to [her parents] and does not communicate with" her. *Id.* ¶ 27. These allegations suggest Rushmore wants nothing to do with her—a situation far removed from the harassing debt collector at the heart of the Act's protection. *See Wilt v. Household Life Ins. Co.*, 2016 WL 584485, at *4 (S.D. W. Va. Sept. 30, 2016) ("The WVCPPA is a 'comprehensive protection law' that restricts the ways by which debt collectors may try and collect debts.'") (quotation omitted).

Altogether, Parsley's complaint suggests she voluntarily attempted to make mortgage payments on her parent's mortgage. *See* Compl. ¶ 31 (stating Rushmore's actions "interfered with Plaintiff's ability to catch up on her arrears"). This is not enough. *See Ballard v. Bank of Am., N.A.*, 2013 WL 5963068, at *11 (S.D. W. Va. Nov. 7, 2013) (finding decision to continue making payments to retain collateral does not satisfy "alleged obligation" requirement under the Act).

Parsley disagrees. She makes three arguments. None persuade. *First*, Parsley stresses the West Virginia Supreme Court of Appeals "repeatedly counsel[s]" the WVCCPA should be liberally construed. Pl.'s Mem. at 10. Sure enough. *See, e.g.*, *Bourne v. Mapother*, 998 F. Supp. 2d 495, 500–01 (S.D. W. Va. 2014) (explaining the Supreme Court of Appeals "consistently state[s]" the WVCCPA be "given a broad and liberal construction"). Even so, the WVCCPA "expressly limits it grant of civil enforcement suits to 'consumers.'" *Young*, 800 S.E.2d at 229. This Court has "no authority" to "rewrite" the Act. *Id.* at 230 n.17. Instead, the Act's "incontestable enforcement limitation" reflects the state legislature's decision to "expressly prohibit" all individuals "falling outside" the limitation. *Id.* at 230. If the state legislature "wishes to broaden the reach" of the Act's enforcement mechanism to non-consumers like Parsley, "it may easily amend the Act's limiting language." *Id.* at 230 n.17.

*Second*, Parsley argues ruling for Rushmore empowers loan servicers to strip plaintiffs of "consumer" status by forcing them to file for bankruptcy or to pay the debt at issue. *See* Pl.'s Mem. at 10–11. She cites *Cookus v. Westlake Services*, No. 15-C-343 (Cir. Ct. Berkeley Cnty., W. Va. Apr. 21, 2016), *Thompson v. PHH Mortgage Corp.*, No. 19-C-488 (Cir. Ct. Cabell Cnty. Aug. 7, 2020), and *Guthrie v. PHH Mortgage Corp.*, 79 F.4th 328 (4th Cir. 2023). None move the needle.

In *Cookus*, Ashley Cookus purchased an automobile with a finance plan serviced by Westlake Services, LLC. *See* No. 15-C-343, slip op. at ¶ 1. Cookus fell behind on the account. *See id.* Westlake Services, LLC sought collection through phone calls and the mail. *See id.* Cookus filed for bankruptcy. *See id.* ¶ 3. The Bankruptcy Court discharged her debts—including her debt to Westlake Services. *See id.* ¶ 4. When Cookus sued Westlake Services, they argued Cookus was not a "consumer" under the WVCCPA because she discharged her debt. *See id.* ¶ 9. The Court disagreed. At the time she agreed to the finance plan, Cookus was "unquestionably" a "natural person" and "actually obligated to pay a consumer debt." *Id.* ¶ 15. She did not lose this status through the bankruptcy discharge—injunctive relief with the "effect not of extinguishing [her] debt, but of making it no longer personally collectible." *Id.* ¶ 12.

The Court reaffirmed *Cookus* in *Thompson*. There, Samantha Thompson and her husband purchased a home. *See* No. 19-C-488, slip op. at 2. They financed the purchase through a mortgage loan serviced by PHH Mortgage. *See id.* The couple fell behind on payments. *See id.* at 2–3. Eventually, Mrs. Thompson sold the home and paid off the mortgage loan. *See id.* 3–4. When Mrs. Thompson sued PHH Mortgage, they argued Mrs. Thompson was not a "consumer" under the WVCCPA because she paid off her mortgage loan and released her deed of trust. *See id.* at 5–6. The Court disagreed. When Mrs. Thompson signed the mortgage loan and deed of trust, she was "indisputably" a consumer under the WVCCPA *Id.* at 5. She did not lose this status by paying off

her debt. *See id.* at 7. In fact, the Court stressed "no authority" empowers courts to "retroactively" convert consumers into non-consumers. *Id.*

*Guthrie* teaches the same. There, a couple purchased a home in North Carolina. *See id.* at 334. To finance the purchase, the couple signed a mortgage loan serviced by PHH Mortgage. *See id.* Shortly after the purchase, the couple divorced. *See id.* Following the separation, the husband filed for bankruptcy. *See id.* The Bankruptcy Court discharged the husband's obligations on the mortgage loan. *See id.* However, the husband remained on deed to the property. *See id.* at 342. When PHH Mortgage tried to collect the debt, the husband sued. *See id.* at 335. Echoing *Cookus* and *Thompson*, the Fourth Circuit explained a plaintiff who discharges a debt through bankruptcy remains a consumer under the North Carolina Debt Collection Practices Act. *See id.* at 342. In other words, surrendering property in bankruptcy does not automatically transfer that property to a lender or empower the lender to foreclose the property. *See id.* After all, the husband remained on the deed. *See id.* As such, he remained obligated to maintain hazard insurance, pay taxes on the property, and pay for maintenance and preservation of the property. *See id.*

These cases stand for a simple proposition: once a consumer, always a consumer. If a plaintiff is "unquestionably" a consumer when they assume an obligation to pay debt, they remain a consumer despite later bankruptcy discharges or fulfilments of the debt. Parsley's claims do not fit this mold. She does not allege she was a signatory to her parent's mortgage loan. She does not mention bankruptcy proceedings or a bankruptcy discharge. She does not allege she paid off her debt. She does not allege the Deed of Trust required her to maintain hazard insurance, pay taxes on the property, or pay for maintenance and preservation of the property. At most, Parsley suggests she voluntarily made mortgage payments to Rushmore. *See* Compl. ¶ 31. This is not enough.[5]

---

[5] Parsley also relies on *Farber v. Brock & Scott, LLC*, 2016 WL 5867042 (D. Md. Oct. 6, 2016)—a Fair Debt Collection Practices Act case. *See* Pl.'s Resp. at 12. The FDCPA "broadly extends its rights of enforcement 'with

*Finally*, Parsley stresses the unfairness of a ruling for Rushmore. She argues "[t]o the extent this Court finds [she] lacks standing as a result of not being liable on the debt, that is a factual circumstance entirely created by [Rushmore's] malfeasance." Pl.'s Resp. at 11. Parsley's outrage is misguided. Other methods exist to enforce the WVCCPA's commandments. For example, a non-consumer may file a complaint with the Consumer Protection Division of the Attorney General's Office. *See* W. Va. Code § 46A-7-103(2). The Attorney General may then "pursue any investigation, prosecute any suit[,] and take any other proper action" it sees fit. *Id.* § 46A-7-103(1). Moreover, Parsley remains free to cite a violation of the WVCPPA as prima facie evidence of negligence against a debt collector. *See Young*, 800 S.E.2d at 229 (citation omitted); *infra* Part V.

In short, an individual seeking recovery under the WVCCPA must allege they either owe or allegedly owe the debt at the center of the collection activity. Parsley does neither. She, therefore, has no cause of action. Accordingly, the Court **DISMISSES** Counts II and III.

## IV

In Count IV, Parsley alleges Rushmore intentionally interfered with the Deed of Trust securing her home by refusing to confirm her as successor in interest and to assume her parent's mortgage loan. *See* Compl. ¶ 52.

A claim for tortious interference has four elements: (1) the existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof the interference caused the plaintiff harm; and (4) damages. *See, e.g.*, *Hatfield v. Health Mgmt. Assoc. of W. Va.*, 672 S.E.2d 395, 403 (W. Va. 2008).

---

respect to any person.'" *Young*, 800 S.E.2d at 229 (quoting 15 U.S.C. § 1692k(a)). The West Virginia Supreme Court of Appeals warns against relying on FDCPA precedent to interpret the "incontestable enforcement limitation[s]" in the WVCCPA. *Id.* at 230 (dubbing reliance on FDCPA cases "decidedly specious"). The Court heeds this advice.

Parsley pleads these elements. She alleges she is a party through succession to the Deed of Trust secured by her home. *See* Compl. ¶ 50. Under the Deed of Trust, Parsley must make monthly payments. *See id.* Rushmore—a third-party—intentionally interfered with this requirement by (1) refusing to confirm her as a successor in interest to the mortgage loan and (2) failing to modify the mortgage loan. *See id.* ¶ 52. As a result of Rushmore's actions, Parsley faces the "imminent loss of her home" and increased arrears. *Id.* ¶¶ 31, 53. *See also id.* ¶¶ 28–29. At this stage, these allegations suffice to survive a motion to dismiss. *See Coleman v. JP Morgan Chase Bank, N.A.*, 2014 WL 1871726, at *9 (S.D. W. Va. May 8, 2014) (Chambers, J.) (permitting similar tortious interference claim against servicer to proceed even though servicer retained the ability to argue they could not be held liable as an "agent" to a party to the contract).[6]

Rushmore disagrees. They make two arguments. Neither succeeds. *First*, Rushmore argues Parsley does not allege she is a party to the Deed of Trust. *See* Def.'s Mem. at 14. But Parsley alleges her parents assigned her the Deed of Trust. *See* Compl. ¶¶ 6, 50. The Deed of Trust provides the "covenants and agreements" of the Deed "shall inure to" the "successors and assigns of Lender and Borrower." Def.'s Mot., Ex. C ¶ 11. Nothing more is required.

*Second*, Rushmore argues Parsley does not cite any section of the Deed of Trust allegedly interfered with. *See* Def.'s Mem. at 15. But Parsley alleges the Deed of Trust prevents a servicer from accelerating a mortgage loan in violation of federal law. *See* Compl. ¶ 9. She then alleges federal law requires servicers "promptly confirm successors in interest following transfer of property," *id.* ¶ 12 (citing 12 C.F.R. § 1024.30(d)), and prohibits servicers from accelerating a loan

---

[6] To be sure, the Court expresses doubt as to whether the Deed of Trust requires Plaintiff to "make monthly payments for the benefit of the loan's owner and to ensure against foreclosure." Compl. ¶ 50. The Deed of Trust explicitly states successors and assigns are not "personally liable" on the mortgage loan note. Def.'s Mot., Ex. C ¶ 11. However, because the issue is not fully briefed, the Court makes no ruling on the issue. The Court expects discovery to provide context to the parties' responsibilities (if any) under the Deed of Trust.

when a parent transfers or sells the underlying property to their child, *see id.* ¶¶ 9–10 (citing 12 U.S.C. § 1701j-3(d)). At this stage, nothing more is required.

Moreover, while the Deed of Trust and RESPA do not require Rushmore to adopt any specific loss mitigation option, *see* Def.'s Mem., Ex. C ¶ 11; *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777–79 (4th Cir. 2013) (explaining lenders do not have an obligation to modify a borrower's loan); *Lucas v. Fairbanks Capital Corp.*, 618 S.E.2d 488, 490 (W. Va. 2005) (emphasizing under West Virginia law, the servicer can foreclose on a property without considering alternatives like loan modification), their discretion is not unbridled liberty to accelerate a loan in violation of federal law, *cf. Webb v. Chase Manhattan Mtg. Corp.*, 2008 WL 2230696, at *26–*28 (imposing a "reasonableness" standard on servicers under RESPA). This Court itself has suggested servicers must act in good faith when exercising their discretion to refuse loan mitigation options. *See, e.g.*, *Hanshaw v. Wells Fargo Bank, N.A.*, 2015 WL 5345439, at *18– *19 (summarizing case law). Parsley's claim draws on these principles.

Accordingly, the Court **DENIES** Defendant's motion to dismiss Count IV.

## V

In Count V, Parsley alleges Rushmore negligently (1) failed to confirm her as a successor in interest, (2) required information from her parents to process loan mitigation applications, and (3) scheduled a foreclosure sale despite a pending loan mitigation application. *See* Compl. ¶ 56.

To plead negligence, the plaintiff must allege the defendant owed her a duty, breached that duty, proximate causation, and damages. *See, e.g.*, *Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016). Relevant here, a plaintiff may use a defendant's statutory violation against him. *See Rogers v. Tarbox*, 668 F. Supp. 3d 478, 483 (S.D. W. Va. 2023); *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991) ("Violation of a statute is prima facie evidence of negligence.")

(quotation omitted). Of course, statutory violations only show so much; if proven, they show a duty was breached. *See Shaffer v. Acme Limestone Co.*, 524 S.E.2d 688, 701 (W. Va. 1999). They do not show proximate causation or damages. *See Waugh*, 412 S.E.2d at 759.

A "quick skim" of Count V reveals Parsley pleads a "garden variety negligence claim." *Rogers*, 668 F. Supp. 3d at 484. She alleges Rushmore owes her a "duty of care in handling her request to be confirmed as successor in interest and in being treated as a borrower for purposes of loss mitigation." Compl. ¶ 55. Rushmore breached this duty by failing to confirm her successor status, requiring information from her parents for a loan mitigation application, and scheduling a foreclosure sale. *See id.* ¶ 56. She alleges these duties and breaches stem from violations of RESPA and the WVCCPA. *See id.* ¶¶ 10, 12, 37, 45, 48 (outlining statutory duties servicers must follow when servicing a loan and collecting debt). As a result of Rushmore's actions, Parsley alleges she faces increasing arrears and interest rates, lost wages and travel expenses, stress, and anxiety. *See id.* ¶ 57. *See also id.* ¶¶ 30–32 (similar). West Virginia law "demands nothing more" at this stage. *Jones v. Logan Cnty. Bd. of Educ.*, 881 S.E.2d 374, 383 (W. Va. 2022).

Rushmore disagrees. They launch six attacks. None prevail. *First*, Rushmore argues the Bankruptcy Court "already held" Rushmore had no duty to engage in loss mitigation. *See* Def.'s Mem. at 16. This argument is meritless. *See supra* Part I.

*Second*, Rushmore argues negligence cannot be predicated on intentional acts. *See* Def.'s Mem. at 16. Generally, "intentional acts cannot form the basis of a claim for negligence." *Doe v. City of Gauley Bridge*, 2022 WL 3587827, at *10 (S.D. W. Va. Aug. 22, 2022) (citation omitted). Yet this truism is usually invoked when a plaintiff attempts to "turn an intentional tort into negligent conduct." *Weigle v. Pfifer*, 139 F. Supp. 3d 760, 780 (S.D. W. Va. 2015). For example, in *Doe v. City of Gauley Bridge*, this Court dismissed battery and assault claims couched as

negligence. *See* 2022 WL 3587827, at *10 (S.D. W. Va. Aug. 8, 2022). Similarly, in *Greene v. Putnam County Commission*, the Court dismissed a civil conspiracy claim couched as negligence. *See* 2022 WL 16859755, at * (S.D. W. Va. Nov. 10, 2022). Finally, in *Doe v. Cabell County Board of Education*, the Court dismissed a failure to report sexual assault claim because any failure to report sexual misconduct was "part of" the "intentional conduct" of sexual assault. 2022 WL 568344, at *3 (S.D. W. Va. Feb. 24, 2022). In short, when a plaintiff must "necessarily" prove intent on the underlying wrong, she must allege an intentional tort—not negligence. *Id.*

Parsley's theory of liability differs. She is not sneaking an intentional tort or crime through the backdoor of negligence. *See Weigle*, 139 F. Supp. at 780. Instead, she cites Rushmore's alleged violations of RESPA and the WVCCPA as evidence of prima facie negligence. She cites only civil provisions of these statutes. *See* Compl. ¶¶ 37, 42(b), 45(b), 48(b). When a plaintiff seeks civil penalties under civil statutes, "the defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant." *Morissette v. United States*, 342 U.S. 246, 270 (1952). RESPA and the WVCCPA are no exception. To prove a violation of either statute, Parsley need not prove scienter. *See Stover v. Fingerhut Direct Marketing, Inc.*, 709 F. Supp. 2d 473, 483 & n.12 (S.D. W. Va. 2009) (refusing to hold the WVCCPA's civil provisions "impermissibly vague" for lack of a scienter requirement); *Pacific Ins. v. Burnet Title*, 380 F.3d 1061, 1065 (8th Cir. 2004) ("[P]roof of intent is not necessarily required to establish a violation of RESPA."). Instead, she must prove Rushmore violated either statute's commands—irrespective of its mental state. *See Pacific Ins.*, 380 F.3d at 1065 (recognizing it is possible for a loan servicer to "engage in intentional conduct but without intending to violate RESPA[] and thus negligently violate RESPA"). *Cf. Munsey v. Smith*, 2022 WL 568345, at *2 (S.D. W. Va. Feb. 24, 2022) (finding violation of a statutory duty

to "drive with due care" and "warn pedestrians" by honking "when necessary" constituted prima facie negligence irrespective of the driver's intent).

*Third*, Rushmore argues Parsley cannot allege prima facie negligence because she has no cause of action under RESPA or the WVCCPA. *See* Def.'s Mem. at 16–17. They rely on *Good v. American Water Works Co.*, 2015 WL 3540509 (S.D. W. Va. June 4, 2015). There, the Court dismissed a negligence claim predicated on a violation of the federal Toxic Substances Act because the plaintiff did not have a private cause of action under the federal statute. *See id.* at *4.

The Court agrees Parsley has no cause of action under RESPA or the WVCCPA. *See supra* Parts II, III. The Court, however, quibbles with *Good*'s application to this case. *Good* may have captured the law in 2015. Since then, however, the West Virginia Supreme Court of Appeals endorsed a different approach—at least in the debt collection context. In *Young v. EOSCCA*, the Court held non-consumers have no cause of action under the WVCCPA. *See* 800 S.E.2d at 230. Nevertheless, the Court emphasized non-consumers can still bring an action against a debt collector under a theory of negligence because a "violation of any statute is a prima facie case of negligence." *Id.* at 229 (quoting *Payne v. Green Tree Serv.*, 2006 WL 8438492, at *2 (Mar. 7, 2006)). *See also* W. Va. Code 55-7-9 (empowering plaintiffs injured by the "violation of *any* statute" to sue) (emphasis added). The Court did not differentiate between federal and state statutes. *See id.* Neither does this Court. As a result, at least in the context of the WVCCPA and debt collection, a plaintiff may plead a negligence claim based on a violation of a statute they do not have a cause of action under. Parsley does so here. *But see Bailey v. Chase Bank USA, N.A.*, 2010 WL 4867963, at *5 (suggesting a plaintiff without a cause of action might not recover damages even if she proves the defendant was negligent).

-21-

*Fourth*, Rushmore argues it did not breach any duty by requesting information from Parsley's parents because the servicer chooses what information constitutes a complete loss mitigation application under 12 C.F.R. § 1024.41(b)(1). *See id.* Even assuming Rushmore is correct, the Court cannot take Rushmore's word as truth as this stage. *See Smith v. Shoe Show, Inc.*, 2022 WL 583569, at *5 (M.D.N.C. Feb. 25, 2022) ("At the motion dismiss stage, this Court must accept the [c]omplaint's factual allegations (not Defendants' allegations) as true") (citing *Iqbal*, 556 U.S. at 678). Discovery may prove Rushmore does not require parental information in cases like this one. It may not. Only time will tell.

*Fifth*, Rushmore repeats its argument it had no duty to offer any loss mitigation options to Parsley. *See* Def.'s Mem. at 17. They argue even if Rushmore confirmed Parsley and accepted her loan mitigation application, they would still proceed with foreclosure. *See id.* Again, this argument urges the Court to accept Rushmore's allegations of hypotheticals as truth. The Court declines to do so at this stage. *See Cantley v. W. Va. Regional Jail*, 728 F. Supp. 2d 803, 815 (S.D. W. Va. 2010) (accepting the "truth of Plaintiff's allegations" at the motion to dismiss stage despite "a number of factual allegations" asserted by Defendants). The thrust of Parsley's complaint is had Rushmore confirmed her as a successor in interest, she might have received critical loan mitigation options to "save her home." Compl. ¶¶ 31 (alleging without confirmed successor status, she was unable to secure a Homeowners Assistance Fund from the West Virginia Housing Development Fund). Rushmore's arguments suggests Parsley faces an uphill battle. Nevertheless, its arguments are better suited for a motion for summary judgment than a motion to dismiss.

*Finally*, Rushmore argues the economic loss doctrine bars Parsley's negligence claim because she only cites "stress and anxiety." Def.'s Mem. at 17–18. The Court disagrees. The economic loss doctrine precludes recovery in negligence for "purely economic damages." *Eastern*

*Steel Constructors, Inc. v. City of Salem*, 549 S.E.2d 266, 272 (W. Va. 2001). Parsley alleges a slew of "financial loss[es]" including increased arrears, increasing rent rates, and the loss of a West Virginia Homeowner Assistance Fund grant. Compl. ¶¶ 30–31. *See also id.* ¶ 57 (similar). But she also alleges she suffers from stress, anxiety, and the "fear of loss of home." *Id.* ¶ 32. *See also id.* ¶ 57 (similar). Admittedly, Parsley's allegations of non-economic loss are sparse. Yet at this "early stage of the litigation," the Court cannot conclude only "purely economic losses are at issue." *Good*, 2015 WL 3540509, at *4. Similarly, at this stage, the Court cannot "definitely say" a special relationship does not exist between Parsley and Rushmore excusing the economic loss doctrine. *Princeton Cmty. Hosp. Assoc., Inc. v. Nuance Commc'n*, 2020 WL 1698363, at *7 (S.D. W. Va. Apr. 7, 2020). *See also* Pl.'s Resp. at 14–16 (making such an argument). Of course, discovery "may cause problems in the future" for Parsley. *Henry v. Synchrony Bank*, 2016 WL 6871269, at *4 (S.D. W. Va. Nov. 21, 2016). For now, however, her claim proceeds.

Accordingly, the Court **DENIES** Defendant's motion to dismiss Count V.

**VI**

In Count VI, Parsley alleges Rushmore misrepresented to her that they required information from her parents to consider her loan mitigation application. *See* Compl. ¶ 59.

To plead fraudulent misrepresentation, the plaintiff must allege (1) the fraudulent act was the act of the defendant or induced by him; (2) the act was material and false; (3) the plaintiff relied upon it and was justified under the circumstances in relying upon it; and (4) the plaintiff suffered damages based on her reliance. *See, e.g.*, *Lengyel v. Lint*, 280 S.E.2d 66, 276–77 (W. Va. 1981).

Parsley adequately pleads fraudulent misrepresentation. She alleges Rushmore falsely told her information from her parents was required to complete her loan mitigation application. *See* Compl. ¶ 59. As to materiality, she alleges Rushmore treated the lack of parental information as

dispositive when denying her loan mitigation applications. *See id.* ¶¶ 20, 27, 29, 60. Relying on Rushmore's misrepresentation, Parsley hired counsel to challenge Rushmore and applied (unsuccessfully) for a West Virginia Homeowner Assistance Fund grant. *See id.* ¶¶ 22–26, 31. As to damages, Parsley cites the inability to make loan payments, increased arrears, and the "risk of losing her childhood home." *Id.* ¶ 61. Nothing more is required at this stage.

Rushmore disagrees. None of their arguments persuade. *First*, Rushmore reiterates RESPA provides Rushmore discretion to decide what constitutes a complete application. *See* Def.'s Mem. at 19 (citing 12 C.F.R. § 1024(b)(1)). Again, this argument puts the cart before the horse. The Court cannot accept Defendant's factual allegations as truth at this stage. *See Smith*, 2022 WL 583569 at *5. *See also* Part V (rejecting similar arguments).

*Second*, Rushmore stresses the words "rely" or "relied" "cannot even be found in the complaint." Def.'s Mem. at 19. True enough. But plaintiffs are "not required to use any precise or magical words in their pleading." *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 418 (4th Cir. 2014). Parsley's claim suggests she hired counsel and sought (unsuccessfully) third-party financial support all because of Rushmore's misrepresentation. *See* Compl. ¶¶ 22–26; 31. This is enough at this stage. *See E.I. du Pont de Nemours*, 637 F.3d 435, 447–48 (4th Cir. 2011) (rejecting argument a cause of action for price discrimination should be dismissed because the counterclaimant did not use the phrase "price discrimination" in the counterclaim).

*Finally*, Rushmore argues Parsley does allege she was "damaged because of [her] reliance." Def.'s Mem. at 20 (quotation omitted). But Parsley alleges had Rushmore not repeated its misrepresentation, she might have completed loss mitigation negotiations sooner, sought counsel sooner, maintained loan payments, and reduced (or prevented) arrears. *See* Compl. 22–26;

31, 61. In essence, without the misrepresentation, Parsley alleges she would have saved her home. Parsley bears the burden to prove these damages. But for now, her claim survives.

Accordingly, the Court **DENIES** Defendant's motion to dismiss Count VI.

<strong>CONCLUSION</strong>

The Court **GRANTS IN PART**, **DENIES IN PART** Defendant's Motion to Dismiss. The Court **DISMISSES** Counts I, II, and III. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion & Order to counsel of record and any unrepresented parties.

ENTER:          February 21, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE