## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

BRITNEY PARSLEY,

           Plaintiff,

v.                              CIVIL ACTION NO. 3:23-0525

RUSHMORE LOAN
MANAGEMENT SERVICES LLC,

           Defendant,

and

SN SERVICING CORPORATION and
U.S. BANK TRUST NATIONAL ASSOCIATION
AS TRUSTEE OF THE IGLOO SERIES IV TRUST,

           Rule 19 Parties.

### MEMORANDUM OPINION & ORDER

Before the Court is Defendant Rushmore Loan Management Services LLC's Motion for Summary Judgment (Def.'s Mot.), ECF 38. SN Servicing Corporation and U.S. Bank Trust National Association as Trustee of the Igloo Series IV Trust join the motion. Def.'s Mot. at 1 n.1. Upon review, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.[1]

---

[1] The Court heard oral argument and considered Defendant Rushmore Loan Management Services LLC's Memorandum in Support of its Motion for Summary Judgment ("Def.'s Mem."), ECF No. 39; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Resp."), ECF No. 46; and Defendant Rushmore Loan Management Services LLC's Reply Memorandum in Support of its Motion for Summary Judgment ("Def.'s Reply"), ECF No. 49.

# BACKGROUND

Plaintiff Britney Parsley moved back into her childhood home in 2016. Def.'s Mem., Ex. J ("Parsley Dep.") at 17. Her parents, Maria and Ralph Muncy, moved to Kentucky. *Id.* The Muncys "gave her the house and just told [her] to pay the payments" until it was paid off. *Id.* at 40:22-24. Parsley claims she did so successfully until August 2018, when Rushmore took over as the servicer for the loan. *Id.* at 88; Def.'s Mem., Ex. K ("Trueba Dep.") at 15. The parties agree that the loan went into default in late 2018. *See* Def.'s Mem. at 2; Pl.'s Resp. at 2. At this time, there was a dispute over whether Rushmore erroneously failed to credit payments made on the loan. *See* Pl.'s Resp., Exs. 1, 2; Parsley Dep. at 86-87. In February 2019, Rushmore began to refuse payments. *See* Pl.'s Resp., Exs. 2, 3; Parsley Dep. at 86. Parsley testified that she and her mother "kept trying to pay and kept trying to talk to [Rushmore]" until they received a letter referencing foreclosure. Parsley Dep. at 86:10-23.

On July 19, 2019, Rushmore sent a letter to the Muncys indicating that foreclosure was imminent. Pl.'s Resp., Ex. 4. Four days later, the Muncys deeded the property to Parsley. Def.'s Mem., Ex. E. The deed lists the market value of the property as $38,760. *Id.* Parsley testified she believes the property is worth less than that amount now. Parsley Dep. at 93. The day after her parents deeded her the property, Parsley filed for bankruptcy in an attempt "to save the home." Parsley Dep. at 89:6; *see also* Def.'s Mem., Ex. A ¶ 3. In the bankruptcy proceeding, Rushmore argued that the property transfer from the Muncys to Parsley triggered a "due on transfer" clause and therefore Rushmore could accelerate the debt regardless of whether payments were current. Def.'s Mem., Ex. A ¶¶ 12-15.

The bankruptcy court lifted the automatic stay on July 20, 2020. Def.'s Mem., Ex. A. Rushmore continued to reject payments and return checks to the Muncys. *See* Pl.'s Resp., Exs. 5,

6 (returning payments in October 2020 and February 2021).[2] In October 2020, Parsley sent Rushmore copies of the deed and her driver's license and requested Rushmore confirm her as successor in interest and allow her to assume and modify the mortgage loan. Pl.'s Resp., Ex. 7. Rushmore sent its response to the Muncys at their Kentucky address "in reference to [their] written inquiry received on October 19, 2020." Pl.'s Resp., Ex. 9. The response stated that Rushmore added Parsley as an authorized third party. *Id.* It did not acknowledge Parsley's request to be confirmed as a successor in interest. *Id.*

In February 2021, Parsley filled out a Borrower Assistance Application to assume and modify the mortgage loan. Pl.'s Resp., Ex. 10. In April 2021, Rushmore sent its response to the Muncys in Kentucky. Pl.'s Resp., Ex. 11. The letter stated the application was "incomplete" because it failed to include information from "all parties obligated on the loan." *Id.* At this point, the Muncys did not live on the property, did not hold title to the property, did not have any personal obligation to pay the debt secured by the property, and did not intend to make the payments. *See* Parsley Dep. at 18-19, 40; Def.'s Mem., Exs. E, A ¶ 7. In 2003, the Muncys signed a deed of trust and note to obtain a loan secured by the property. *See* Def.'s Mem., Exs. C, D. In 2005, they

---

[2] Rushmore sent form letters to the Muncys indicating that Parsley's payments were rejected:

We are returning your payment . . . for the following reason(s):
__ Signature is missing – Please sign and return the check.
__ Payee on the check is incorrect – Please make your check payable to Rushmore Loan Management Services and return the check to P.O. Box 52708, Irvine, Ca 92619-2708.
__ Legal amount on check does not match the numerical amount.
__ Payment is short or not enough to pay the total amount due.
__ Loan Matured
__ Other: _____

*See* Pl.'s Resp., Exs. 3, 5, 6 (letters sent in March 2019, October 2020, and February 2021). Rushmore did not add a mark before any of these options or otherwise indicate a reason for the returned payments. *Id.* Rushmore's counsel said it was unclear to him why Parsley's payments were not credited.

-3-

discharged any personal obligation on the loan through bankruptcy but opted to continue making payments. *See* Def.'s Mem., Ex. A ¶ 7; *see also* Trueba Dep. at 72.

Rushmore continued to send letters to the Muncys in Kentucky inviting them to reapply for loss mitigation. Pl.'s Resp., Exs. 13, 14 (letters dated July 5, 2022 and December 27, 2022). In 2022, a payoff statement indicated the total amount due on the loan was $118,063.60. Pl.'s Resp., Ex. 16. Parsley testified that she has "begged" Rushmore to take payments, but Rushmore has only accepted two payments on the loan since she filed for bankruptcy in 2019. Parsley Dep. at 79:1-4. Instead, Rushmore pursued foreclosure. *See* Def.'s Mem., Ex. H. In August 2023, Rushmore transferred servicing of the loan to SN Servicing Corporation. *See* Trueba Dep. at 15.

## LEGAL STANDARD

To obtain summary judgment, the moving party must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court does not resolve disputed facts, weigh the evidence, or make determinations of credibility. *See Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). "Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute." *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, No. CIV.A. 2:04-1306, 2008 WL 906334, at *3 (S.D.W. Va. Mar. 31, 2008) (citing *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir.1991)).

The moving party has the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Anderson*, 477 U.S. at 256. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007)

## ANALYSIS

Plaintiff alleged six causes of action: (1) Failure to Comply with Loss Mitigation Procedures under 12 C.F.R. § 1024.41; (2) Unconscionable Debt Collection under West Virginia Code § 46A-2-128; (3) Misrepresentation under West Virginia Code § 46A-2-127; (4) Tortious Interference with Contract; (5) Negligence; and (6) Fraudulent Misrepresentation. *See* Compl. ¶¶ 33-61. The Court dismissed the first three claims. *See* Mem. Op. & Order, ECF No. 27. Defendant moved for summary judgment on the remaining claims.

### I. Tortious Interference with Contract (Count IV)

Parsley alleges Rushmore intentionally interfered with the Deed of Trust securing her home by refusing to confirm her as successor in interest and allow her to assume and modify the mortgage loan. *See* Compl. ¶ 52. A claim for tortious interference has four elements: (1) the existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof the interference caused the plaintiff harm; and (4) damages. *See, e.g., Hatfield v. Health Mgmt. Assoc. of W. Va.*, 672 S.E.2d 395, 403 (W. Va. 2008). Rushmore argues the tortious interference claim fails for three

reasons: (1) Parsley was not a party to the Deed of Trust or otherwise obligated on the mortgage; (2) Rushmore cannot be held liable for interference because it acted as an agent on behalf of the lender; and (3) Rushmore otherwise did not interfere with any provision of the Deed of Trust. Def.'s Mem. at 6-9.

Rushmore asserts that Parsley conceded in her bankruptcy that she is not a party to the Deed of Trust or the note. *Id.* at 7. Indeed, she conceded that she was not obligated upon the note. Def.'s Mem., Ex. B at 5. But to argue that Parsley made the same concession regarding the Deed of Trust, Rushmore points to language supporting the opposite conclusion. Def.'s Mem. at 7. Parsley asserted in the bankruptcy action:

> In West Virginia, a non-indebted or obligated third party real estate holder may place their property up for a deed of trust without incurring obligation upon the actual note itself. This is where we find ourselves in this matter. A third party to the transaction, Britney Parsley, title Holder of property up for a deed of trust but who is not obligated upon the note.

Def.'s Mem., Ex. B at 5.

Parsley asserts in the instant action that she is a party to the Deed of Trust because she succeeded her parents as title holder for the property, and the Deed of Trust provides that the provisions of the contract shall inure to successors and assigns. *See* Compl. ¶ 50; Pl.'s Resp. at 11; *see also* Def.'s Mem., Ex. C ¶ 11. Parsley asserted in the bankruptcy action that "her parents transferred to her ownership of the property." Def.'s Mem., Ex. B at 1. She referred to the Muncys as "previous title holder." *Id.* at 2. She does not assert that she was a party to the original transaction, when her parents established a lien on the property according to the Deed of Trust and also agreed to a personal obligation to pay the sums owed under the note.

A deed of trust and promissory note are "two separate legal documents, each with its own unique purpose." *Arnold v. Palmer*, 686 S.E.2d 725, 733 (W. Va. 2009). In *Arnold*, the West Virginia Supreme Court of Appeals reversed a lower court's decision preventing a bank's trustee

from foreclosing on a widow's home, effectively preventing the bank from enforcing the deed of trust. The lower court blocked the foreclosure because only the woman's late husband had signed the promissory note. *Id.* at 728-30. Both spouses signed the deed of trust, "which secured the real property at issue that was used as the collateral for the repayment of the executed promissory note." *Id.* at 729. The court explained that the bank could foreclose on the property under the deed of trust, but the widow's other assets were protected because she was not a party to the promissory note. *Id.* at 735.

Parsley asserts that her position is similar to that of the widow in *Arnold*: She is a party to the Deed of Trust but not to the promissory note. Parsley may be a party to the Deed of Trust without incurring a personal obligation to repay the loan with assets other than her home. "[T]he option to pay money to retain collateral is not equivalent to a personal obligation to repay a discharged debt." *Ballard v. Bank of Am., N.A.*, No. CIV.A. 2:12-2496, 2013 WL 5963068, at *11 (S.D.W. Va. Nov. 7, 2013). After 2005, the Muncys made payments to retain their home because it was collateral under the Deed of Trust. Parsley seeks to do the same now that the home belongs to her.

Rushmore confuses these questions of obligation. So did Parsley in her deposition. Rushmore argues that Parsley conceded in her deposition that she is not a party to the Deed of Trust. Def.'s Mem. at 7. Parsley answered "no" when Defendant's counsel asked if she was a party to the Deed of Trust executed by her parents in 2003. Parsley Dep. at 57:14-15. Immediately before and after this "no" answer, she answered "no" to the questions of whether she recognized the 2003 Deed of Trust and whether she knew "what a deed of trust is, generally." *Id.* at 57:3-58:6. She later agreed that she "never signed a mortgage agreement or note on this piece of property" and had not, to her knowledge, become a party to any of those agreements. *Id.* at 98:24-99:6.

But earlier in her deposition, Parsley said that her parents gave her the property and that the property would be hers once she paid off the mortgage debt. *Id.* at 40:14-24. Now, Parsley asserts that this testimony was a description in layman's terms of the Deed of Trust assignment, which is supported by the circumstantial evidence that the Muncys ultimately deeded the property to Parsley. Pl.'s Resp. at 12. Accordingly, there is a genuine issue of fact as to whether Parsley is a party to the Deed of Trust.

Rushmore argues that even if Parsley is a party to the Deed of Trust, Rushmore cannot be held liable for interference because it acted as an agent on behalf of the lender. Def.'s Mem. at 7-9. But "[t]he exception to this general rule is if the agent is acting outside of the scope of its employment." *Hanson v. Amerihome Mortg. Co., LLC*, No. 2:17-CV-03691, 2017 WL 6626328, at *7 (S.D.W. Va. Dec. 28, 2017) (dismissing a claim for tortious interference with contract because the plaintiff did not allege a loan servicer acted outside the scope of its authority).[3]

Here, Rushmore operated according to the Limited Power of Attorney from U.S. Bank Trust National Association. Pl.'s Resp., Ex. 15. The Limited Power of Attorney provides that Rushmore's "actions . . . must be in accordance with Federal, State, and local laws . . . and no power is granted . . . to take any action that would be . . . adverse to the interests of" the principal. *Id.* Parsley asserts that Rushmore can be held liable because it violated the law and acted adverse to its principal's interests. Pl.'s Resp. at 12-13.

---

[3] The *Hanson* court pointed to a case applying District of Columbia law as an example of this principle in a mortgage servicing context. 2017 WL 6626328 at *20 (citing *Parker v. BAC Home Loans Servicing LP*, 831 F. Supp. 2d 88 (D.D.C. 2011)). Rushmore argues the *Parker* court required evidence that the loan servicer acted with an improper purpose or with actual malice to hold the servicer liable. Def.'s Reply at 4. But *Parker* explains that an "independently wrongful or illegal act" is sufficient to find malice. 831 F. Supp. 2d at 93 (quoting *Curaflex Health Servs., Inc. v. Bruni*, 899 F. Supp. 689, 697 (D.D.C. 1995)). Here, Parsley alleges that Rushmore acted outside the scope of its authority when it violated federal law.

Parsley alleges that Rushmore accelerated the debt and moved to foreclose on the property because the Muncys transferred ownership to Parsley. *Id.* at 13. Rushmore argued in bankruptcy court that it could accelerate the debt because the Muncys transferred the property to Parsley, regardless of whether the loan was current. Def.'s Mem., Ex. A ¶¶ 12-15. If Rushmore accelerated the debt according to the due on transfer clause, it did so in violation of federal law. Under the Garn-St. Germain Depository Institutions Act of 1982, a lender cannot exercise its option under a due on transfer clause upon "a transfer where the spouse or children of the borrower become an owner of the property." 12 U.S.C. § 1701j3(d)(6).

Parsley further asserts that Rushmore violated federal law because it failed to confirm her as a successor in interest and failed to consider her for all loss mitigation options for which she was eligible. Pl.'s Resp. at 13. The Real Estate Settlement Procedures Act and its implementing regulation, Regulation X, impose duties on mortgage services like Rushmore. *See* 12 U.S.C. § 2605; *see also* 12 C.F.R. §§ 1024.31, 1024.41. Under Regulation X, a successor in interest is "a person to whom an ownership interest in a property securing a mortgage loan . . . is transferred from a borrower, provided that the transfer" falls into one of several categories including "[a] transfer where the spouse or children of the borrower become an owner of the property." 12 C.F.R. § 1024.31. A confirmed successor in interest is "a successor in interest once a servicer has confirmed the successor in interest's identity and ownership interest in a property that secures a mortgage loan." *Id.*

Servicers must have policies and procedures such that they can communicate with a potential successor in interest about what documents they must submit and then promptly make a confirmation determination. *Id.* § 1024.38(b)(1)(vi). Once a successor in interest applies for loss mitigation, a servicer has discretion to determine what constitutes a complete loss mitigation

application. *Id.* § 1024.41(b)(1). Nothing in the regulations requires a servicer to offer any particular loss mitigation option. *Id.* § 1024.41(a).

Rushmore's corporate representative, Gerardo Trueba, testified he was only familiar with a successor in interest in the case of a deceased borrower. Trueba Dep. at 45. Trueba could not answer questions about what documents the company requires to confirm a potential successor in interest, what department would make the decision to confirm a potential successor in interest, and whether the company has a policy requiring some acknowledgement that a potential successor in interest has submitted documentation for consideration as a confirmed successor in interest. Trueba Dep. at 50-52. There is no other evidence in the record to answer these questions.

The regulations make clear that the information relevant to evaluating a potential successor in interest is information related to "identity and ownership interest in the property," not ability to pay. 12 C.F.R. § 1024.38(b)(1)(vi). They contemplate that a servicer will need different documents for a confirmation determination and for the consideration of loss mitigation applications. *See id.* § 1024.38(b)(1)(vi) (referring to "documents the servicer reasonably requires to confirm that person's identity and ownership interest in the property"); *id.* § 1024.41(b) (referring to documents and information the servicer requires).

At oral argument, Rushmore's counsel said he could not explain why Rushmore did not confirm Parsley as a successor in interest after she provided a copy of the deed and her personal information. Rushmore does not seriously contest that Parsley meets the definition of a successor in interest, even as it refused to confirm her as such. It is undisputed that Rushmore did not promptly communicate with Parsley about her request to be confirmed as successor in interest or about additional information it needed to confirm her identity or ownership interest. Instead, it appears that the company conditioned its confirmation determination on Parsley's submission of

-10-

a joint loss mitigation application with her parents. There is no evidence in the record that Rushmore has policies and procedures that are reasonably designed to achieve prompt confirmation determinations, as required by Regulation X. 12 C.F.R. §§ 1024.38(a), 1024.38(b)(1)(vi).

A reasonable jury could find that Rushmore violated federal law when it enforced the due on transfer clause in violation of the Garn-St. Germain Act and failed to maintain policies designed to facilitate prompt confirmation determinations in violation of 12 C.F.R. § 1024.38.[4] Further, Parsley has presented evidence that Rushmore took actions adverse to its principal's interests. She presented evidence that Rushmore returned her payments and sought foreclosure even as the loan balance exceeded the value of the property by tens of thousands of dollars.[5]

---

[4] The Consumer Financial Protection Bureau's interpretation of 12 C.F.R. § 1024.38(b)(1)(vi) explains that a servicer's failure to maintain proper policies and procedures regarding confirmation determinations could "interfere[] with a successor in interest's ability to apply for loss mitigation options according to the procedures provided in § 1024.41." CONSUMER FINANCIAL PROTECTION BUREAU, OFFICIAL INTERPRETATION TO 38(b)(1)(vi), www.consumerfinance.gov/rules-policy/regulations/1024/interp-38/#38-b-1-vi-Interp [perma.cc/5UGX-P2G3].

Parsley argues that Rushmore violated federal law when it failed to consider her for all loss mitigation options for which she was eligible, as required by 12 C.F.R. § 1024.41. Pl.'s Resp. at 13. Rushmore argues that Parsley never submitted a complete loss mitigation application and emphasizes that servicers have discretion to determine what constitutes a complete loss mitigation application. Def.'s Mem. at 14; *see also* 12 C.F.R. § 1024.41(b)(1). Both arguments miss the mark. Instead, it seems that Rushmore's violation of 12 C.F.R. § 1024.38 interfered with Parsley's ability to apply for loss mitigation.

[5] At oral argument, Defendant's counsel argued that Parsley's version of the facts (i.e., that the property is worth less than $38,760) is contradicted by the record. Defendant's counsel pointed to the original amount of the loan and argued that homes generally appreciate in value over time.

The amount financed with CitiFinancial in 2003 was $111,744.45. Def.'s Mem., Ex. C. Parsley asserts that, at this time, CitiFinancial had a pattern and practice of predatory lending in West Virginia which involved originating mortgage loans in "inflated amounts that far exceeded the market value of the property." Pl.'s Resp. at 2-3 (citing *Hensley v. CitiFinancial Credit Co.*, 2021 WL 5909184 (S.D.W. Va. Dec. 14, 2021)). At oral argument, Parsley's counsel further argued that homes in rural Crum, West Virginia do not necessarily appreciate in value over time.

In a 2005 bankruptcy filing, the Muncys valued the property at $125,000. *See* Pl.'s Resp. at 9 n.1; Trueba Dep. at 134. Parsley testified that her parents bought the property for $50,000 in

Parsley argues Rushmore violated two express provisions of the Deed of Trust. First, Parsley cites language that binds co-signers to the Deed of Trust:

> Any Borrower who co-signs this Deed of Trust, but does not execute the Note . . . (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the Terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

Def.'s Mem., Ex. C ¶ 11. Parsley argues Rushmore was required to exercise its discretion to modify the loan under this provision in good faith. But this language is entirely permissive as to the lender. Parsley has not provided any evidence to show that Rushmore violated this provision of the Deed of Trust.

Second, Parsley argues Rushmore violated the provision of the Deed of Trust that provides the lender will not accelerate the debt according to the due on transfer clause if it is prohibited by federal law. Def.'s Mem., Ex. C ¶ 11. Parsley presented evidence that she and the Muncys were behind on the loan due to a dispute over whether Rushmore erroneously recorded that the Muncys failed to make payments. *See* Parsley Dep. at 85-88; Pl.'s Resp., Exs. 1, 2. During the course of this dispute, Rushmore began refusing payments. Pl.'s Resp., Ex. 3. In July 2019, Rushmore sent a letter indicating that foreclosure was imminent. Pl.'s Resp., Ex. 4. But then, once Parsley filed for bankruptcy, Rushmore argued it could accelerate the debt because the Muncys transferred the property to Parsley, regardless of whether the loan was current. Def.'s Mem., Ex. A ¶¶ 12-15. It is unclear whether Rushmore accelerated the debt because of the disputed and missed payments or because of the property transfer.

Thus, there is a dispute of fact as to why Rushmore accelerated the debt. Parsley presented

---

the early 1990s and the house has deteriorated in recent years. Parsley Dep. at 95-97. Based on this record, the Court finds that Parsley's version of the facts is not "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

evidence that Rushmore's choice to accelerate the debt rather than confirm her as a successor in interest caused harm. *See* Parsley Dep. at 90-94 (describing increased arrears after Rushmore returned payments); *see also* Pl.'s Resp., Exs. 5, 6 (returned payments). Accordingly, summary judgment is **DENIED** as to Count IV.

## II. Negligence (Count V)

Parsley alleges Rushmore negligently failed to confirm her as a successor in interest, required information from her parents to process loss mitigation applications, and scheduled a foreclosure sale despite a pending loss mitigation application. *See* Compl. ¶ 56. This claim requires Parsley show the defendant owed her a duty, the defendant breached that duty, proximate causation, and damages. *See, e.g., Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016).

Rushmore launches several attacks on this claim: (1) it is barred by the economic loss doctrine; (2) there was no special relationship between Parsley and Rushmore; (3) Rushmore was statutorily permitted to request information from the Muncys; (4) Rushmore was entitled to pursue foreclosure because Parsley never submitted a complete loss mitigation application; and (5) Parsley has no negligence claim for Rushmore not confirming her as a successor in interest because her request was in bad faith and she suffered no damages because she was able to submit a loss mitigation application. Def.'s Mem. at 9-15.

Rushmore's fifth argument is discarded at the outset. Rushmore cites no law to support the proposition that it could ignore a request for a confirmation determination if it concluded the request was made in bad faith. Additionally, Rushmore ignores Parsley's argument that its failure to confirm her as successor in interest meant she could not obtain external assistance, such as a grant from the West Virginia Housing Development Fund. *See* Compl. ¶ 31.

First, the Court will address the economic loss doctrine issues. West Virginia law does not allow recovery in negligence for economic damages in the absence of physical harm to person or property. *See, e.g., Webb v. Appalachian Power Co.*, No. CIV.A. 2:09-0813, 2011 WL 1636944, at *5-7 (S.D.W. Va. Apr. 29, 2011). A plaintiff cannot "maintain an action in tort for an alleged breach of a contractual duty." *Lockhart v. Airco Heating & Cooling*, 567 S.E.2d 619, 624 (W. Va. 2002). An exception applies when there is evidence of a "special relationship" between the plaintiff and defendant. *Aikens v. Debow*, 541 S.E.2d 576, 589 (W. Va. 2000). "Tort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation." *Lockhart*, 567 S.E.2d at 624.

Parsley testified that she has "had a lot of health issues since all this has went on" including heart issues, dizziness, and anxiety. Parsley Dep. at 80-81. She testified that she has seen several doctors over her dizziness, which arose about two years before the April 2024 deposition. *Id.* She testified she had seen a doctor for her anxiety for about one year and was put on anxiety medication. *Id.* She testified she "had to have a heart cath done." *Id.* Parsley did not testify that Rushmore's actions caused any of these health issues. "[T]he law is clear that a mere possibility of causation is not sufficient to allow a reasonable juror to find causation." *Tolley v. ACF Indus., Inc.*, 575 S.E.2d 158, 168 (W. Va. 2002). It is Parsley's burden to produce evidence that Rushmore's conduct caused her health issues. *See, e.g., Turner v. Speedway LLC*, No. CIV.A. 2:14-9185, 2015 WL 4392398, at *7 (S.D.W. Va. July 15, 2015). Parsley has not met her burden. Thus, the Court turns to the special relationship exception to the economic loss doctrine.

In deciding whether a special relationship exists beyond the parties' contractual obligations, courts look to "the extent to which the particular plaintiff is affected differently from

-14-

society in general." *Coleman v. JP Morgan Chase Bank, N.A.*, No. CIV.A. 3:14-0183, 2014 WL 1871726, at *9 (S.D.W. Va. May 8, 2014) (quoting *Aikens*, 541 S.E.2d at 589). In the context of mortgage lending and servicing, courts consider whether the lender has created a special relationship by performing services not normally provided by a lender to a borrower. *Coleman*, 2014 WL 1871726, at *9. There is nothing atypical about a servicer considering applications for loss mitigation and confirmed successor in interest status. *See* 12 C.F.R. §§ 1024.30(d), 1024.38, 10.24.41 (requiring servicers maintain policies to promptly confirm successors in interest and, once confirmed, consider their loss mitigation applications).

Parsley asserts that she has a contractual relationship with Rushmore according to the Deed of Trust. Pl.'s Mem. at 11. She acknowledges that Rushmore "is contractually responsible for considering applications for loss mitigation." *Id.* at 17. She argues that Rushmore owed a legal duty to provide her with accurate information about the status of her confirmation determination and application for loss mitigation. Pl.'s Resp. at 16. But "a duty to provide accurate loan information is a normal service in a lender-borrower relationship." *Ranson v. Bank of Am., N.A.*, No. CIV.A. 3:12-5616, 2013 WL 1077093, at *6 (S.D.W. Va. Mar. 14, 2013). Finally, Parsley cites two cases applying California tort law to find that a servicer processing loss mitigation applications had a duty of care: *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10-03892 WHA, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011) and *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10-0290 PVT, 2010 WL 1881098 (N.D. Cal. May 10, 2010). These cases are not relevant to the issue of whether there was a special relationship under West Virginia law. Based on the evidence in the record, a reasonable juror could not find that a special relationship existed.

Therefore, the negligence claim fails as a matter of law because it is barred by the economic loss doctrine and no special relationship existed. The Court does not reach Rushmore's third and

fourth arguments. Summary judgment is **GRANTED** as to Count V.

### III. Fraudulent Misrepresentation (VI)

It is undisputed that Rushmore represented to Parsley that information from her parents, the original borrowers, was required for her to be considered for loan modification. *See* Compl. ¶ 59; Def.'s Mem. at 12. Parsley asserts that this representation was false because she was a successor in interest and therefore Rushmore was required to treat her as the borrower and consider her for available loss mitigation. *See* Compl. ¶ 60. She points to several harms: "loss of the opportunity to maintain loan payments, increasing arrears, and the risk of losing her childhood home and the home in which she has raised her children." *See* Compl. ¶ 61. A claim of fraudulent misrepresentation requires (1) the fraudulent act was the act of the defendant or induced by the defendant; (2) the act was material and false; (3) the plaintiff relied upon it and was justified under the circumstances in relying upon it; and (4) the plaintiff suffered damages based on her reliance. *See, e.g., Lengyel v. Lint*, 280 S.E.2d 66, 69 (W. Va. 1981).

The parties only contest the issue of whether the representation was false. *See* Def.'s Mem. at 16; Pl.'s Resp. at 19; Def.'s Reply at 12. The Court observes that Rushmore can only provide a circular justification for its requirement that Parsley submit her parents' financial information: Rushmore required the information because it determined the information was required. *See* Trueba Dep. at 119-20. At oral argument, Rushmore's counsel conceded that the requirement was "odd" given the circumstances.

Parsley suggests that Rushmore's inability to explain or support its requirement— combined with several years of conduct "contrary to federal and state law, its own policies, standard industry practice, legitimate business and economic considerations and plain common sense"—is circumstantial evidence that the information was not actually required. Pl.'s Resp. at 1.

Parsley also emphasizes that nothing in the corporate policies produced during this litigation would require her to produce the Muncys' information. *Id.* at 19-20. Instead, she argues, Rushmore's policies required it to follow federal law and promptly evaluate her applications to be confirmed as successor in interest and for loss mitigation. *Id.*; *see also* Pl.'s Resp., Ex. 8; Trueba Dep. at 36-37.

Fraud cannot be precisely defined. *See generally Wallace v. Wallace*, 291 S.E.2d 386, 387 (W. Va. 1982). "Fraud assumes so many different hues and forms that courts are compelled to content themselves with comparatively a few general rules for its discovery and defeat, and allow the facts and circumstances peculiar to each case to bear heavily on the conscience and judgment of the court or jury in determining its presence or absence." *Hale v. Hale*, 59 S.E. 1056, 1061 (W. Va. 1907). Not only is circumstantial evidence sufficient to prove fraud, but the West Virginia Supreme Court of Appeals has repeatedly noted that direct evidence should not be expected in fraud cases. *Glover v. EQT Corp.*, No. 5:19-CV-223, 2023 WL 7391871, at *6 (N.D.W. Va. Oct. 16, 2023) (collecting cases). "In no class of cases does circumstantial evidence play a more active and appropriate part than in fraud cases; and necessarily so, else fraud would run riot in the land, and honest creditors would be at the mercy of chicanery and covin. The parties plan to hide." *Vandervort v. Fouse*, 43 S.E. 112, 113 (W. Va. 1903), *overruled on other grounds*, *McGlone v. Superior Trucking Company, Inc.*, 363 S.E.2d 736, 745 (W. Va. 1987).

To survive summary judgment, Parsley is not required to produce direct and positive evidence that Rushmore did not need her parents' financial information. "[P]roving a negative is a challenge in any context." *Vieth v. Jubelirer*, 541 U.S. 267, 311 (2004) (Kennedy, J., concurring). It is Rushmore's burden to show that there is no question of fact. Its only evidence is a statement by its corporate representative that it required the Muncys' information. Even Rushmore's counsel

acknowledged that, given the Muncys had no obligation to pay the debt and no interest in the collateral that secured it, this explanation does not make sense.

The parties cite no caselaw in their arguments addressing whether Rushmore's representation was false because this is ultimately a factual question. Summary judgment is not appropriate. Summary judgment is **DENIED** as to Count VI.

## CONCLUSION

The Court **GRANTS** the Motion as to Count V (Negligence) and **DENIES** the Motion as to Count IV (Tortious Interference with Contract) and Count VI (Fraudulent Misrepresentation). The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion & Order to counsel of record and any unrepresented parties.

ENTER:        February 24, 2025

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE